O’CONNELL, Justice.
In this workmen’s compensation proceeding the claimant seeks review of an order of the Industrial Commission reversing an order of the deputy.
In his order the deputy awarded claimant compensation for 100% loss of use of the left eye as a result of true hysteria arising out of an admittedly compensable accident.
The commission reversed the deputy on the ground that there was no competent substantial evidence to support the finding that the loss of use of the eye was permanent. Further, it noted that although the loss of the use of claimant’s left eye is due solely to a conversion reaction, there being no physical injury or defect, the claimant had not cooperated in psychiatric treatment, had not permitted himself to be hypnotized, and had refused to undergo treatment requiring the use of sodium pen-tothal suggested by the treating psychiatrist. The commission remanded the cause to the deputy with instructions to deny the claimant payment of compensation for disability until such time as he would submit to reasonable psychiatric and medical treatment to correct his condition.
On this review the claimant insists, first, that the commission abused its appellate function by finding that the claimant had unreasonably refused to continue treatment whereas the deputy had found, on the only testimony in the record, that further treatment would not benefit the claimant, and second, that there was substantial competent evidence to support the deputy’s finding of permanent loss of use of the eye.
We will consider the claimant’s second contention first.
All of the evidence shows that claimant suffers a complete loss of use of his left eye as a result of a true hysteria or conversion reaction but that there is no organic injury to his eye.
Two hearings were held before the deputy. At the first the medical witnesses testified that there was no organic reason why claimant could not see with his left eye and therefore his problem was one-to be treated by a psychiatrist. Thereupon the deputy ordered that claimant be given psychiatric treatment for four weeks and recessed the hearing until claimant had received such treatment.
Thereafter claimant saw Dr. Gilbert, a psychiatrist, on eleven occasions, after which this doctor discharged claimant for the reason that he did not feel that claimant would respond to treatment.
Subsequently, the second hearing was-held before the deputy. At this hearing-Dr. Gilbert testified that although claimant had consented to undergo hypnotherapy such treatment was not successful due to claimant’s unwillingness to cooperate or-permit himself to be hypnotized; claimant refused to undergo treatment involving the taking of sodium pentothal; and that he did not believe claimant would respond to further psychotherapy.
Dr. Gilbert further testified, as did all' other medical witnesses, that there was nothing wrong with the claimant’s eyes, his blindness was functional and that it would1 cease when his “need for that symptom no longer exists.” He explained that in-this case the need which prompted the blindness was monetary and claimant was angry at the insurance carrier. He quoted1 claimant as saying “I will keep them going for the next ten years so long as they- *23 pay my compensation and boat rental at the fishing camp.” The reference to the fishing camp was explained by the doctor who testified that a great part of claimant’s need was to get $5,600 to open a boat rental system at a fishing camp in Kentucky
It was this doctor’s opinion that a prompt settlement of the claim and end to litigation would be the best treatment which could be administered to the claimant.
As to the permanency of claimant’s blindness Dr. Gilbert testified that “it could clear up overnight”, but that “as long as litigation is going on, he will claim he cannot see out of that eye.” In response to a question as to what would happen to the eye if the claim was totally denied and the litigation ceased, he testified: “I think within some period of time he would recover use of the eye. I cannot say when.”
Dr. Gilbert’s testimony was the only evidence relative to the permanency of claimant’s condition.
We think that the commission was correct in holding that this evidence is not competent substantial evidence to support a finding that the claimant’s blindness is permanent. Rather the evidence seems to clearly show that the condition, while of indefinite duration, is not permanent. Indefinite is more synonymous with “temporary” than with “permanent” for it contemplates that the condition will end at an unpredictable time, whereas “permanent” does not contemplate that the condition will cease to exist.
Claimant cites authorities holding that when the duration of a total disability is indefinite it is proper to award compensation on the basis of permanent disability under the theory that the employer is adequately protected by the provisions, such as those in Sec. 440.28, F.S.A., which permit modification on a showing of change of condition. This argument is not sound, as applied to this case, because there is nothing in this record to indicate that the claimant suffers total disability.
Having held that claimant’s disability is not permanent, and there being no showing that it is total, it seems to us that the only basis for an award is to bé found in Sec. 440.15(4), F.S.A. which allows compensation for temporary partial disability. Compensation under this section requires a determination of loss of wage earning capacity experienced because of the temporary partial disability. No such finding was made by the deputy and he could not properly have made one, for the record is devoid of any evidence on the question.
The deputy obviously treated the claim as being for a scheduled injury under Sec. 440.15(3), subsections (e) and (r). These provisions are clearly inapplicable for they relate only to cases where the disability is “partial in character but permanent in quality,” not to cases such as this one where the disability, if any, is partial in character and temporary in quality.
Therefore as this case now stands there is no basis for an award of compensation. All the record shows is that the claimant has suffered the temporary loss of use of an eye, but it does not reveal the extent, if any, of the resulting disability measured in terms of loss of wage earning capacity, as it must be measured under Sec. 440.15(4).
We come then to the second question, whether the commission was correct in ordering that claimant be denied further compensation unless he undergo psychiatric treatment involving the use of sodium pen-tothal, the so-called truth serum.
The record clearly indicates that the use of sodium pentothal is neither harmful nor dangerous. Dr. Gilbert testified that it is no more dangerous or harmful “than crossing the street.” Claimant, who had been a state trooper in Kentucky, testified that he had seen sodium pentothal used on several occasions, he was “not scared of it,” and that he had refused its use on him only because “the brain shows no resistance to any kind of questions that was asked.” However, he testified he was not afraid *24 of what he would say under the influence of the drug.
As this Court said in Sultan & Chera Corp. v. Fallas, Fla.1952, 59 So.2d 535, 537, “[t]here can be no question that an injured employee will be denied compensation because of some disability which may be removed, or modified, by an operation of a simple character not involving serious suffering or danger of death.”
While that case and the above statement obviously dealt with an operation on the body, we think it is equally applicable where the condition involved is purely psychiatric, as is the treatment proposed in this case.
We therefore conclude that if a claimant who suffers a disabling psychiatric disorder refuses to undergo psychiatric treatment which does not involve serious suffering or danger of serious harm he may be denied the benefits of the Act if it is shown in the record that the treatment is likely to bring about an improvement in his condition.
However, in this case it is not clear whether further psychiatric treatment would be likely to bring about an improvement in claimant’s hysterical blindness.
Dr. Gilbert quite obviously initially felt that both hypnotherapy and use of sodium pentothal would be beneficial, for he tried hypnosis and suggested the truth serum to claimant during the time he treated him following the first hearing.
However, when this doctor testified at the second hearing he seemed to be of the view that the best treatment was settlement and end of the litigation. He seemed to be of the view that further attempt at psychiatric treatment would be futile, for he testified “I think that any money that is expended [in such treatment] is wasted on this man, because I feel' you are not accomplishing anything.” As above noted this doctor testified that he discharged claimant because he felt “that he would not respond to the type of treatment that we would offer.”
It might well be that this doctor’s resignation to failure in the treatment of the claimant is based upon claimant’s demonstrated unwillingness to cooperate, as evidenced by his resistance to hypnosis and his refusal to take sodium pentothal. if claimant were to willingly and cooperatively submit to both, or either, of these procedures this physician might well be of the opinion that further ps)'’chiatric treatment would not be a waste of money, but might alleviate claimant’s condition.
However, he did not so testify. Without testimony from this, or some other, specialist in psychiatry indicating that with claimant’s submission to sodium pentothal and/or cooperation in further attempts at hypnotherapy, such treatments would likely be successful, we do not feel that an order denying further benefits to claimant is warranted under the facts of this case.
It would appear to us that on remand the deputy should receive evidence which will enable him to determine whether or not further psychiatric care of the nature discussed here would be likely to assist in alleviating claimant’s condition. If the deputy should then conclude that such treatment should be had he should order claimant to cooperate in receiving such treatment, and if he refuses further benefits should be denied him.
Accordingly the petition for certiorari is denied in part and granted in part with directions .that the cause be remanded to the deputy for further proceedings consistent herewith.
ROBERTS, C. J., and TERRELL and THOMAS, JJ., concur.
CALDWELL, J., dissents.