October 4, 1991

IN THE SUPREME COURT OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

MARIANAS PUBLIC LAND CORPORATION, ) APPEAL NO. 90-039
 ) CIVIL ACTION NO. 88-685
 Plaintiff/Appellee, )
 )
 vs. )
 )
BERNARD S. GUERRERO, dba Saipan ) OPINION
Sanitation Service, )
 )
 Defendant/Appellant. )
_____)

Argued and Submitted March 27, 1991

 Counsel for Plaintiff/Appellee: Brian W. McMahon
 P.O. Box 909
 Saipan, MP 96950

 Counsel for Defendant/Appellant: Kenneth L. Govendo
 P.O. Box 2377
 Saipan, MP 96950

BEFORE: DELA CRUZ, Chief Justice, VILLAGOMEZ and BORJA, Associate
 Justices.

VILLAGOMEZ, Justice:

 This is an appeal from an order granting partial summary

judgment in favor of Marianas Public Land Corporation ("MPLC").

The trial court concluded as a matter of law that Bernard S.

Guerrero ("Guerrero") breached his lease agreement with MPLC and

that the same was subject to termination. Guerrero timely appealed the order.

## FACTS

Guerrero[1] and MPLC[2] entered into a 25 year lease agreement ("lease") on October 23, 1987, in which Guerrero leased 4,000 square meters of public land at Lower Base, identified as Lot No. 038 E 03. Guerrero leased the land in order to operate his sanitation business, maintain his heavy equipment, operate an automobile repair shop, fabrication and welding services, and other support facilities.

The lease provided that, within three months of its effective date, Guerrero was to secure all required permits and submit to MPLC construction plans, specifications, and estimates. The lease required Guerrero to obtain fire, damage, and liability insurance during the term of the lease. It also prohibited Guerrero from abandoning the premise for 90 days or more.

Shortly after the lease was executed, Guerrero went to the Commonwealth Utilities Corporation ("CUC") to inquire about hook-ups of water, power, and sewer lines to the premises. CUC informed him that there was a moratorium placed on power and water hook-ups to commercial establishments. It further told him that the duration of the moratorium was indefinite. Neither MPLC nor

---

[1] Guerrero does business as Saipan Sanitation Services.

[2] Article XI of the Constitution established MPLC, a public corporation, and vested it with the responsibility to manage public lands.

303

Guerrero knew that such moratorium existed when they executed the lease.[3]

Believing the moratorium to be of temporary duration, Guerrero decided not to start any construction on the premises until the same was lifted. However, he continued paying MPLC the quarterly rent.

On June 8, 1988, MPLC notified Guerrero, in writing, that Guerrero was in default for failing to submit to MPLC the construction plans and drawings; for failing to use (abandoning) the premises, as intended, for over ninety days; and for failing to procure the required insurance coverages.

Guerrero replied that he had not abandoned the premises; that he was waiting for CUC to lift the moratorium; and that he was still paying the rent. He added that there was nothing on the land to insure and requested a one-year extension of time on the requirement to construct the building for his business operations.

MPLC denied the request for extension of time. On September 23, 1988, it filed suit seeking termination of the lease. Guerrero raised, as an affirmative defense, the CUC moratorium on commercial hook-ups and his inability to use the premises without the utilities.[4] Thereafter, MPLC moved for summary judgment.

---

[3] In his affidavit, attached to his memorandum in opposition to the motion for summary judgment, Guerrero stated that he did not know about the moratorium when the lease was granted. MPLC did not produce any evidence to refute that sworn statement.

[4] Guerrero raised two other affirmative defenses which are not raised on appeal.

In the absence of written and customary law,[5] the trial court considered the applicability of § 269, <u>Restatement (Second) of Contracts</u> (1979) ("§ 269"),[6] and concluded that the defense of impracticability does not apply because the CUC moratorium was not "temporary." If the moratorium were temporary, then § 269 would apply.

Guerrero assigns as error the trial court's conclusion that § 269 is not applicable. He argues that the question of whether the CUC moratorium is "temporary" raises a question of disputed fact that should go to trial, rather than be disposed of by summary judgment. He also argues that the moratorium is "temporary" and not "permanent." Consequently, § 269 applies.

---

[5] § 3401. <u>Applicability of Common Law</u>.

In all proceedings, the rules of the common law, as expressed in the restatements of the law approved by the American Law Institute and, to the extent not so expressed [i]s generally understood and applied in the United States, shall be the rules of decision in the courts of the Commonwealth, in the absence of written law or local customary law to the contrary; provided, that no person shall be subject to criminal prosecution except under the written law of the Commonwealth.

[6] § 269. <u>Temporary Impracticability or Frustration</u>.

Impracticability of performance or frustration of purpose that is only temporary suspends the obligor's duty to perform while the impracticability or frustration exists but does not discharge his duty or prevent it from arising unless his performance after the cessation of the impracticability or frustration would be materially more burdensome than had there been no impracticability or frustration.

## ISSUE and STANDARD OF REVIEW

The issue presented is whether the trial court erred in ruling that the moratorium is not "temporary" and that Section 269 does not apply. This is a question of law which we review *de novo*. In re Estate of Jose P. Cabrera, No. 90-044 (N.M.I. July 31, 1991). A grant of summary judgment is reviewed *de novo*. MPLC v. Kan Pacific Saipan, Ltd., No. 90-014 (N.M.I. Nov. 21, 1990).

## ANALYSIS

### I.

We review initially the appealability of an order granting *partial* summary judgment *sua sponte*, since the case below has not been entirely disposed of. We are bothered by the filing of this appeal without the requisite certification by the trial court pursuant to Rule 54(b), Com.R.Civ.P. See Metal Coating Corporation v. National Steel Construction Co., 350 F.2d 521 (9th Cir. 1965). We note, however, that Rule 54(b) pertains to multiple claims or multiple parties. Here, there is only one substantive claim made by one party -- MPLC.

Generally, the granting of a partial summary judgment is interlocutory in nature and is not appealable. 10 C. Wright, A. Miller and M. Kane, *Federal Practice and Procedure*, Civil § 2715 (1983), Cf. CNMI v. Hasinto, No. 90-033,34 (N.M.I. Oct. 15, 1990). However, a partial summary judgment may be appealed if it completely disposes of plaintiff's claim and resolving the appeal promptly would expedite the resolution of any remaining issues

306

below. Sheehan v. Atlanta Int'l Ins. Co., 812 F.2d 465 (9th Cir. 1987). A partial summary judgment is also appealable when the claim resolved is separate and distinct from those which remain before the trial court. Hudson River Sloop Clearwater, Inc. v. Department of Navy, 891 F.2d 414 (2d Cir. 1989).

█ For the reasons set forth below, we are satisfied that the partial summary judgment herein is an appealable order.

First, plaintiff claims substantively for the termination of the lease and the resulting re-possession of the land. It also requests for attorneys fees and costs. The order granting partial summary judgment completely disposed of the substantive claim. The claim for fees and costs is distinct from the substantive claim and is determined after the merits are decided.

Second, the matter of restitution, raised by the trial court,[7] pertains to the return of rental payments (made by Guerrero under the lease) and is not a disputed question of fact. The payments are recorded and can readily be ascertained.

Third, although the trial court stated in its order that the applicability of § 266(1), Restatement (Second) of Contracts, (1979),[8] is a matter for trial, it also stated that even if it does

_____

[7] Neither party raised the issue of restitution or made any claim therefor.

[8] § 266. Existing Impracticability or Frustration.

(1) Where, at the time a contract is made, a party's performance under it is impracticable without his fault because of a fact of which he has no reason to know and the non-existence of which is a basic assumption on which the contract is made, no duty to render that performance arises, unless the language or circumstances indicate the contrary.

307

apply, the lease is still terminated. Neither party raised this issue. Nor did either of them make any claim under § 266(1). Thus, the issue of lease termination is distinct and is one that has been fully disposed of by the partial summary judgment.

Fourth, if we determine that § 269 applies in this case, and Guerrero's duty under the lease is temporarily suspended, then there would be no need to try the issue of restitution. Also, if § 269 is found to apply, then § 266(1) does not apply.

For the above reasons, we hold that we have jurisdiction over this appeal.

## II.

The trial court considered whether § 269, applies to the facts of this case and concluded that it did not. It reasoned that since the CUC moratorium on commercial hook-ups was characterized as "indefinite" in duration, therefore, the moratorium is not "temporary" and thus § 269 does not apply. We disagree.

The word "moratorium"[9] in and of itself suggests temporariness. Even the trial court's discussion implies that had the word "indefinite" not been used to characterize the moratorium, it would have clearly meant "temporary."

Guerrero went to CUC and was told about the moratorium. He

---

[9] "Moratorium: A term designating suspension of all or of certain legal remedies against debtors, sometimes authorized by law during financial distress. A period of permissive or obligatory delay, specifically, a period during which an obligor has a legal right to delay meeting an obligation. Delay or postponement of a legal obligation or an action or proceeding." Black's Law Dictionary, 1009 (6th Ed. 1990).

308

was then told that the moratorium was indefinite -- presumably after he inquired how long the moratorium would last. Under these circumstances and within the context in which CUC described the moratorium as indefinite, it is apparent that CUC did not mean that the moratorium was "permanent." Instead, it meant that the time when the moratorium would end was unknown or unpredictable. "Indefinite" as used in this context is more synonymous with "temporary" than "permanent." See Twisdale v. Womack & Martel, 148 So.2d 21 (Fla. Dec. 19, 1962). ("Indefinite is more synonymous with 'temporary' than with 'permanent' for it contemplates that the condition will end at an unpredictable time, whereas 'permanent' does not contemplate that the condition will cease to exist.")

In reviewing the comment and illustrations under § 269, we note the following. First, the impracticability which suspends the obligor's duty may only be temporary. Second, the temporariness of the impracticability does not require a definite ending date. (See Illustration No. 1.) Third, the obligor's duty to be suspended is that which the obligor is to perform for the obligee.

For the above reasons, we hold that § 269 does apply to the facts of this case. The moratorium was for a temporary period and during that period Guerrero's duty to construct the building was suspended as a matter of law. The lease did not terminate as concluded by the trial court. Section 266(1), Restatement (Second) of Contracts (1979), does not apply to the facts of this case. There is no issue of restitution to be considered by the trial court.

We **REVERSE** the decision of the trial court and **REMAND** this case for the trial court to enter judgment for the defendant.

Dated this _____4th_____ day of ____October____, 1991.

_____
JOSE S. DELA CRUZ, Chief Justice

_____
RAMON G. VILLAGOMEZ, Associate Justice

_____
JESUS C. BORJA, Associate Justice