449 So.2d 830 (1984)
Stanley McCANDLESS, Appellant,
v.
M.M. PARRISH CONSTRUCTION and Corporate Group Service, Inc., Appellees.
No. AR-319.
District Court of Appeal of Florida, First District.
April 16, 1984.
Rehearing Denied May 17, 1984.
*831 James Moran of Law Offices of Barton, Cox & Davis, Gainesville, for appellant.
Jack A. Langdon of Jones & Langdon, P.A., Gainesville, for appellees.
SHIVERS, Judge.
In this workers' compensation case, McCandless appeals the order of the deputy commissioner which denies his claim for additional benefits. Appellant contends that the deputy commissioner erred in determining that appellant's psychiatric condition was not causally related to his industrial accident, in determining that appellant reached maximum medical improvement (MMI) on May 20, 1980, and in determining that appellant was not entitled to temporary disability benefits. Appellant also alleges error in the deputy commissioner's finding that appellant's request for examination and treatment by Sister Kenny Institute was in the nature of a petition for modification and that there were no changes in circumstances since the entry of a prior order to justify a modification. We find merit in these contentions and, therefore, reverse and remand.
Claimant was born in 1941 and has a seventh grade education. He has worked in construction all his life, beginning as a common laborer and advancing to rough carpenter by taking part in an apprentice *832 program at night. On January 5, 1979, claimant suffered a compensable industrial injury to his lower back. Claimant eventually came under the care of Dr. Freeman, a neurosurgeon, who performed surgery to correct a free fragment disc rupture. Claimant began to improve after surgery, but this improvement reached a plateau short of the expectations of Dr. Freeman and claimant. Claimant continued to have low back pain and pain in his right leg. Dr. Freeman placed restrictions on claimant consisting of not lifting more than 50 pounds and not bending or lifting repetitively. Even so, Dr. Freeman testified that claimant might have symptomatic pain conducting any activity and that the only way for claimant to avoid pain would be to stay in bed continuously. Dr. Freeman testified that claimant reached MMI from his surgery on May 20, 1980.
Claimant attempted to return to work as a rough carpenter in February 1980, and worked until October 1980, when he was laid off because he could no longer do the job. Because of claimant's continued pain, a number of measures were taken by Dr. Freeman. In June 1980, claimant was prescribed a TENS unit. In September of 1980, a back pain clinic was prescribed and claimant was placed in a rehabilitation program. In October 1980, an epidural block was attempted, which helped only temporarily. In January 1981, claimant was placed in a pantaloon spica cast. It was felt that if the cast improved claimant's condition, then fusion surgery might be indicated. The spica cast produced improvement in claimant's leg pain and some improvement in the back pain. The pain returned, however, following removal of the cast. At this point, claimant and Dr. Freeman began discussing the options of a surgical fusion and a surgical severing of claimant's leg nerve. Prior to any surgery, Dr. Freeman recommended that claimant be sent to the Sister Kenny Institute (Sister Kenny) in Minneapolis which specializes in failed back surgery cases. The carrier, however, disapproved the trip to Sister Kenny and proposed that claimant go to Cathedral Rehabilitation Center (Cathedral) in Jacksonville. A hearing was held on this matter and the deputy commissioner entered an order which stated, "that the employer/carrier has been at all times ready and willing to provide adequate medical care in the state of Florida and is not required to furnish out-of-state medical care and attention, unless it is shown that local treatment is not available. There has been no such showing." This order was entered on October 20, 1981, and was not appealed.
Claimant went to Cathedral in November 1981, but was advised that there was nothing further which Cathedral could do for his low back and leg pain. Cathedral referred claimant back to Dr. Freeman. Dr. Freeman felt that the Cathedral evaluation did not accomplish the results he desired, and he again recommended that claimant be seen at Sister Kenny.
Claimant testified that because Cathedral could do nothing for him, he became depressed. Claimant suffered from severe depression, began drinking heavily, and began experiencing marital problems. Claimant requested psychiatric care from the employer/carrier who refused. However, claimant was referred by a vocational rehabilitation counselor to Dr. Stiefel, a psychiatrist, who began treating him in October 1982. Dr. Stiefel diagnosed neurotic depression, and he testified that the depression was caused by claimant's frustration, continued pain, inability to work and be productive, and sexual problems which were secondary to his back pain. Dr. Stiefel opined that all of claimant's psychiatric problems were a result of his accident, subsequently surgery, and the continued pain. Dr. Stiefel further stated that claimant had not yet reached MMI from a psychiatric standpoint, that claimant was psychologically temporarily totally disabled, and that he had been so for several months.
Rehabilitation counselor Skelly testified that she began seeing claimant in February 1981. At first claimant was very cooperative, but by June 1982 claimant was depressed, drinking, and not fully cooperative. *833 She testified that claimant went through a period of depression when he and his wife were having problems, and that it was hard to work with claimant on vocational rehabilitation while he had these problems.
The employer/carrier had paid claimant TTD benefits through August 23, 1982, at which time benefits were terminated by the employer/carrier due to claimant's alleged uncooperativeness with the rehabilitation counselor. Claim was made for psychiatric care, TTD benefits, and treatment at Sister Kenny. At the hearing, the employer/carrier contended that claimant's psychiatric problems were not a result of the accident. Subsequent to the hearing, the deputy commissioner entered the order sub judice which finds that there was a lack of showing that the psychiatric condition was a result of the accident rather than a result of other personal domestic problems. The order also finds that claimant reached MMI on May 20, 1980, and that there had been no substantial change in circumstances since the entry of the October 1981 order to justify a modification of that order to allow for examination and treatment at Sister Kenny Institute.
Turning to appellant's first point, we find a lack of competent substantial evidence in this record to support the deputy commissioner's finding regarding the causal relationship of claimant's psychiatric problems and the industrial accident. Claimant testified that he began feeling depressed because he was told by Cathedral that there was nothing which could be done for him. This testimony was essentially corroborated by the testimony of claimant's wife. Although claimant testified to marital problems and that his wife had left him for two weeks in August 1982, there is no evidence that the marital difficulties or domestic situation of claimant caused his psychological problems. Rather, based on the sequence of events and the testimony of Mrs. McCandless, it would appear that claimant's depression and heavy drinking were a causative factor in the marital problems. The testimony of rehabilitation counselor Skelly also tends to corroborate the testimony of claimant and his wife. Ms. Skelly stated that when claimant got back from Cathedral he was very depressed because there was nothing Cathedral could do for him. She stated that it was impossible to rehabilitate claimant vocationally because of his psychological problems. Although Ms. Skelly focused primarily on claimant's marital problems in discussing his psychological condition, she offered no testimony on the causation of the psychological or marital problems.
The only medical evidence offered concerning claimant's psychiatric problems was that of Dr. Stiefel. Dr. Stiefel testified unequivocally that claimant's psychiatric problems were a result of his accident, subsequent surgery, and resulting continued pain.
The deputy commissioner, as trier of fact, may judge the credibility of witnesses appearing before him and reject their testimony in whole or in part. Brown v. Race & Race, 413 So.2d 91 (Fla. 1st DCA 1982). It is also true that, under certain circumstances, a deputy commissioner can rely upon lay testimony even if it directly conflicts with medical testimony. Magic City Bottle & Supply Co. v. Robinson, 116 So.2d 240 (Fla. 1959).[1] In the instant case, *834 however, there is no conflict between the medical testimony and the lay testimony, and there is no indication in the order or the record that the deputy commissioner doubted the credibility of any of the witnesses. Further, it is an abuse of discretion for the deputy to reject uncontroverted medical testimony without a reasonable explanation. Polk Nursery Co., Inc. v. Riley, 433 So.2d 1233 (Fla. 1st DCA 1983); see Weaver v. Gold Kist, Inc., 449 So.2d 829 (Fla. 1st DCA 1984); Castro v. Florida Juice Division, 400 So.2d 1280 (Fla. 1st DCA 1981), rev. denied, 412 So.2d 465 (Fla. 1982); USA-1 Building Services v. Bowen, 380 So.2d 481 (Fla. 1st DCA 1980). Where the testimony and evidence are uncontradicted, a finding contrary to the manifest weight of such testimony and evidence is not supported by competent substantial evidence. Standard Oil Co. v. Gay, 118 So.2d 212 (Fla. 1960); see Willingham v. Boynton Service Corp., 383 So.2d 710 (Fla. 1st DCA), rev. denied, 392 So.2d 1372 (Fla. 1980).
In the instant case, the deputy commissioner's finding of no causal relationship between the industrial accident and psychiatric condition is not supported by competent substantial evidence in light of the uncontradicted medical and lay testimony to the contrary. That being so, the deputy commissioner also erred in his determination of MMI, since the medical evidence was also uncontradicted that claimant had not yet reached MMI from a psychiatric standpoint. Because of this, upon remand the deputy commissioner should reconsider claimant's eligibility for temporary benefits.
The deputy commissioner also erred in finding no basis for modification of the prior order which denied claimant's request for evaluation and treatment by Sister Kenny Institute. The failure of Cathedral Clinic to produce the desired results and claimant's subsequent psychological problems clearly represent a change in condition sufficient to allow modification of the prior order pursuant to section 440.28, Florida Statutes. Subsequent to Cathedral's failure to benefit claimant, Dr. Freeman testified that Sister Kenny Institute was a very specialized institution and that Cathedral Clinic was not a suitable substitute for Sister Kenny. Dr. Stiefel also testified that, from a psychiatric standpoint, evaluation and treatment by Sister Kenny would benefit claimant. Under these circumstances, to apply the doctrine of res judicata to the October 1981 order of the deputy commissioner would work an injustice. Cf. Flesche v. Interstate Warehouse, 411 So.2d 919 (Fla. 1st DCA 1982). Upon remand, the deputy commissioner should consider de novo the evidence presented by claimant of the need for evaluation and treatment at Sister Kenny Institute.
Based on the foregoing, the order sub judice is reversed and the cause remanded for reconsideration in light of this opinion.
JOANOS, J., concurs and THOMPSON, J., dissents with opinion.
THOMPSON, Judge, dissents.
I dissent. There is competent substantial evidence to support the order of the deputy commissioner (deputy) denying the claim for additional benefits and I would affirm.
If the deputy had reached a contrary conclusion and found that claimant was entitled to benefits, I would affirm such a decision without any hesitation. Although there obviously is competent substantial evidence to support a conclusion that the claimant is entitled to benefits, that is not the issue before this court. As we have been required to point out before, the issue before this court is whether there is any *835 competent substantial evidence to support the deputy's decision that the claimant is not entitled to any additional benefits, Swanigan v. Dobbs House, 442 So.2d 1026 (Fla. 1st DCA 1983), and there is more than ample competent substantial evidence to support the deputy's finding in this regard.
Although the only medical testimony is that the claimant's psychiatric condition was a result of the accident, since this accident occurred before August 1, 1979, the deputy had the right to ignore this expert medical testimony and to give greater weight to lay testimony and to his own observations and evaluations. The Supreme Court made this very clear in Magic City Bottle & Supply Co. v. Robinson, 116 So.2d 240 (Fla. 1959), Andrews v. Strecker Body Builders, 92 So.2d 521 (Fla. 1957), and Star Fruit Co. v. Canady, 32 So.2d 2 (Fla. 1947). In Magic City, 116 So.2d at 243, the court said:

This Court has held on many occasions that the opinions of medical experts are not in and of themselves conclusive in matters of this kind, and in some cases the deputy commissioner may disregard the opinion of the expert and give greater weight to the lay testimony of demonstrative evidence presented to him. Larson has gone so far as to indicate that it is necessary to "dispel the misconception that valid awards can stand only if accompanied by a definite medical diagnosis." Moreover, Larson further states "if the circumstances themselves are persuasive enough, a conclusion supported by no medical testimony may stand in defiance of medical testimony to the contrary." In arriving at this rule, two underlying reasons may be discerned: the first is that lay testimony, including that of the claimant himself, is of probative value in establishing such simple matters as the existence and location of pain, the sequence of events leading to the compensable condition, and the actual ability or inability of the claimant to perform his work. Secondly, industrial commissions generally become expert in analyzing certain uncomplicated kinds of medical facts, particularly those bearing on industrial causation, disability, malingering and the like. (emphasis added) (footnotes omitted)
The deputy recited in his order that he based his finding upon the testimony of the claimant, the testimony of rehabilitation specialist Skelly, and the deposition of Dr. Stiefel. The testimony of the claimant and the claimant's wife reflects that in the summer of 1982 claimant had been drinking heavily and had marital problems to the degree that the parties separated temporarily. Ms. Skelly, the rehabilitation counselor who first saw claimant in February 1981, said that claimant was initially cooperative but that by June 1982, approximately three and one-half years after his compensable accident, he had become depressed, was drinking, and was not cooperative. According to Ms. Skelly, claimant even went to a job interview with red eyes and smelling of alcohol. Dr. Stiefel testified that the claimant gave him a history that he started feeling depressed and started drinking excessively three months prior to his initial visit to Dr. Stiefel on October 11, 1982. Both the testimony of Dr. Stiefel and Ms. Skelly confirm that claimant's depression or psychiatric problems did not develop until approximately three and one-half years after claimant's industrial accident, when he began drinking heavily and having marital problems. Ms. Skelly also further testified that in her opinion, the psychological problems were primarily his marital problems and later his drinking problem. Dr. Stiefel also testified that the claimant's drinking was a part of his psychiatric problem. The deputy was fully within his rights, based on the case law applicable at the time of this accident, to conclude that claimant's psychiatric condition was a result of personal domestic problems rather than the accident. This conclusion is supported by competent substantial evidence and should be affirmed.
While admitting that under Magic City a deputy can rely on lay testimony, even if it directly conflicts with the medical testimony, the majority contends there is no conflict *836 between the medical testimony and the lay testimony in the instant case. I cannot agree. Ms. Skelly attributed claimant's psychological problems primarily to his marital problems and to his drinking. The other factual testimony, which the deputy is entitled to evaluate, also showed there was a three and one-half year lapse between his accident and the development of his psychiatric problems. The claimant's own admissions of marital and drinking problems and the deputy's opportunity to observe and evaluate the credibility of all witnesses clearly bring this case within the Magic City rule.
Weaver v. Gold Kist, Inc., 449 So.2d 829 (Fla. 1st DCA 1984), Polk Nursery Co., Inc. v. Riley, 433 So.2d 1233 (Fla. 1st DCA 1983), cited by the majority in support of the proposition that it is an abuse of discretion for a deputy to reject uncontroverted medical testimony without a reasonable explanation, all involve accidents which occurred after August 1, 1979. I would agree with the majority as to the applicability of these cases if the accident herein had occurred after August 1, 1979.
The majority also effectively reverses a prior October 20, 1981 order of the deputy, which order was not appealed. It follows from the testimony of Ms. Skelly and the history given by claimant that the October 20, 1981 order was entered approximately eight months prior to the development of any psychiatric problems. There was no question of any psychiatric disability at the time the claimant was found to have reached maximum medical improvement. The claimant seeks for the second time treatment at the Sister Kenny Institute, which the deputy denied in October of 1981. Claimant should not be entitled to relitigate this question except by petition for modification. The deputy treated the claim as a petition for modification on this question and specifically found that there had been no substantial change in the circumstances since the entry of the first order to justify a modification and that the request for examination and treatment at Sister Kenny Institute should be denied. The majority contends that the claimant's subsequent psychological problems represent a change in condition sufficient to allow modification of the prior order. Although the psychological conditions did develop after the date of the initial order, that is not a change in condition that would affect whether the claimant should go to Sister Kenny Institute, a very specialized institute dealing in back problems and not in psychiatric problems. If it were an institute specializing in psychiatric problems, I could agree that claimant's subsequent psychological problems were a sufficient change to allow modification of the prior order, but under the circumstances and facts of this case, there has been no change in claimant's back condition reflected in the record and the deputy's denial of the modification is supported by competent substantial evidence.
I would AFFIRM the order on appeal.
NOTES
[1] In his dissent, Judge Thompson implies that the rule of Magic City Bottle and Supply Company v. Robinson was altered by the 1979 Amendments to the Workers' Compensation Law which took effect August 1, 1979. We note that the rule of Magic City was originally altered by the 1978 Amendments, which apply to all claims arising out of injuries which occur on or after July 1, 1978. Chapter 78-300, Laws of Florida. The date of accident in the instant case is January 5, 1979. This statutory modification, however, has not completely overruled Magic City. Baird-Ray Datsun v. Butler, 400 So.2d 1038 (Fla. 1st DCA 1981) (Ervin, J., concurring in part and dissenting in part).

The issue in the instant case is the causal relationship vel non between claimant's psychiatric problems and his industrial accident. A finding of causal relationship must be based on reasonable medical probability which may be established by medical or lay testimony. Orange County Board of County Commissioners v. Brenemen, 233 So.2d 377 (Fla. 1970). However, lay testimony is not sufficient to establish a causal relationship between the accident and conditions which are not readily observable or discoverable without medical examination. Scotty's, Inc. v. Jones, 393 So.2d 657 (Fla. 1st DCA 1981); Decks, Inc. of Florida v. Wright, 389 So.2d 1074 (Fla. 1st DCA 1980). Lay testimony is of probative value to establish the necessary causal relationship where conditions and symptoms are within the actual knowledge and sensory experience of the claimant. R.P. Hewitt & Associates of Florida, Inc. v. McKimie, 416 So.2d 1230 (Fla. 1st DCA 1982).